[No. 3306.]

## Alonzo Barrett v. The State.

1. Theft — Indictment. — See the statement of the case for an indictment for cow-theft *held* to be in strict accordance with the requirements of the Code.
2. Continuance. — A defendant's application for a continuance because of the absence of a witness must show affirmatively and clearly that due diligence had been used to secure the attendance of the witness, or must in like manner disclose facts which excused the use of diligence. The diligence used must be fully and distinctly set forth, and it must be apparent therefrom that all the means provided by law were promptly resorted to in order to obtain the testimony. If process of attachment had been issued, but not executed, the time at which the process was returned must be alleged; because, if it was returned in time to permit the issuance, execution and return of an *alias* attachment, the defendant was bound to have the *alias* issued and duly forwarded for execution, or else a sufficient reason for not doing so must be shown in the application. See the opinion for an application *held* not to disclose the necessary diligence, inasmuch as its allegations do not show that the defendant had invoked all the means provided by law to coerce the attendance of witnesses.
3. Cattle-theft — Purchase as a Defense — Charge of the Court. — Defendant having adduced evidence that he had purchased the stolen cow from one B., the court instructed the jury to acquit if they "had a reasonable doubt whether *or not* he purchased the said cow from B. in good faith, believing that B. had the right to sell the cow to him." *Held* erroneous, because on the issue involved it gave the benefit of the reasonable doubt to the State as well as to the defendant, and also because it conditions the defendant's innocence on his good faith and his belief in B.'s right to sell, and thereby, in view of all of the evidence, may have prejudiced the defendant's rights.
4. Malpractice — Subornation of Witnesses. — Just prior to the trial of appellant one P., a material witness for the State, had pleaded guilty to a charge of theft, and. as shown by uncontroverted affidavits filed in support of the motion for new trial, had told the State's attorney that he knew facts which would convict the appellant, and the State's attorney had thereupon promised immunity to said P. from his conviction if he would testify "all he knew about defendant in this case." This agreement between P. and the State's attorney was not known to the jury who tried the appellant, nor to him until after his trial. Note *in extenso* the animadversions of this court upon such practice.
5. Theft — Proof of Owners' Non-consent to the Taking — Variance. — Indictment for theft alleged that the stolen animal was the joint property of T. and J. The proof showed that they were owners of the property, and that one B. also owned an interest in it. In view of article 426, Code of Procedure, which provides that an indictment for theft of property belonging to several owners may allege the ownership to be in either of them, it is *held* that there is no variance between the allegation and the proof, and that it was not necessary for the State to prove the non-consent of B. to the taking of the property.

Appeal from the District Court of Dallas. Tried below before the Hon. G. N. Aldredge.

The appellant in this case was convicted of the theft of a cow, the property of D. C. Trigg and S. H. Johnson, in Dallas county, Texas, on the 1st day of October, 1883. He was awarded a term of two years in the penitentiary as punishment. The indictment (formal parts omitted) under which the prosecution was had reads as follows:

"  .  .  . That one Alonzo Barrett, on the 1st day of October, in the year of Our Lord one thousand eight hundred and eighty-three, with force and arms, in the county and State aforesaid, did unlawfully and fraudulently take, steal and carry away from and out of the possession of D. C. Trigg and S. H. Johnson, one certain cow, the corporeal personal property of the said D. C. Trigg and S. H. Johnson, and taken without his consent or the consent of either of them, and with the intent of him, the said Alonzo Barrett, then and there to deprive the owners of the value of said cow, and appropriate her to the use and benefit of him, the said Alonzo Barrett; contrary," etc.

D. C. Trigg was the first witness for the State. He testified that he knew the defendant and was familiar with the cow he is charged to have stolen. Witness lived in Tarrant county, near the Dallas county line. The alleged stolen cow ranged in Dallas county. Witness missed this cow from her accustomed range about the last of June, 1883, and recovered her on or about the first of the following September. In his search for the cow the witness started to Keen's pasture in Dallas county. When near that pasture the witness met the defendant and another man, whom he told of his loss, describing the animal. Defendant replied that he owned such a cow, with the exception that his was branded with the figure 8. His animal, he said, was then running in Keen's pasture. Defendant went with the witness to Keen's pasture, where the witness found his cow. She was the same animal claimed by the defendant, and was branded with two squares connected, or an oblong so divided by a line as to make the device of two squares connected. Witness asked defendant if he called that brand an 8, and he replied: "That is what they told me it was." The cow was marked with a crop off the right ear, and either a swallow fork or under half crop in the left ear. The cow was not branded before she disappeared, and the brand in which she was when found by witness appeared to be fresh,— not over three weeks old.

When the witness first met the defendant near the pasture and asked him about the cow, he said that he bought the cow from a man named Baker, who claimed to have lost her from a herd he was

driving from Eastern Texas to Callahan county, and that Tom Barrett was present when he bought her. The said Tom Barrett was a brother to the defendant. When witness found the cow he told defendant that he would take the cow and him too. He did not object to the witness taking the cow. Witness and S. H. Johnson had possession of the said cow. J. M. Bolin had a small interest in the animal and in other cattle owned by witness and Johnson. Witness and Johnson jointly attended to the sale of the said cattle, although there was no existing agreement that prohibited Bolin from selling. Bolin never sold any of the cattle, though he had the right to do so. Witness had never given his consent to the defendant or any one else to sell the said cow. He had never heard of a man named Baker driving cattle through the country.

S. H. Johnson was the next witness for the State. He testified that he was one of the owners of the cow for the theft of which the defendant was on trial. He never gave his consent to the defendant or other person to take the said cow. Witness, D. C. Trigg and J. M. Bolin owned a cattle ranch near the line of Dallas and Tarrant counties. Bolin's interest in the cattle, including the cow in question, was small. Bolin and witness brought the cattle from Alabama. There was no written agreement as to the sale of the cattle, but that part of the business was attended to by witness and Trigg. Bolin, however, had a perfect right to sell. Bolin was on the ranch in 1883, until near Christmas.

James Pyland was the next witness for the State. He testified that, during the summer of 1883, the alleged stolen cow came to the range near the place where the witness and the defendant lived. Witness then thought that the animal was an estray. Defendant said to witness that if the cow remained on that range until night she would be missing next day, and next day she was missing from the range. About a week later the defendant told the witness that he and one of the Horton boys branded the cow on Mountain Creek. After the cow was taken from Keen's pasture by Trigg, the defendant told the witness that he bought the animal from one Baker. Witness pleaded guilty of the theft of a cow at the present term of the court, but had not yet been sentenced.

Walker Barrett testified for the defense that he saw the alleged stolen animal near Chris Barrett's in June, 1883. She was then in an old blotched brand. Keen's pasture was a public pasture in which many people pastured cattle. The defendant was wholly uneducated.

The motion for new trial raised the questions discussed in the

opinion, and the opinion sufficiently discloses the treaty between the State's attorney and the witness Pyland, which elicits the ruling indicated in the fourth head-note.

*D. A. Williams,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

WILLSON, JUDGE. The indictment is in strict accordance with the statute defining theft, and the exceptions thereto were properly overruled. (*Thompson* v. *The State,* 16 Texas Ct. App., 74.)

It was not error to refuse defendant's application for a continuance, because the same failed to show affirmatively and clearly that due diligence had been used to obtain the testimony of the absent witnesses. It did not show at what times the attachments which had been issued for said witnesses, and which had not been executed, were returned. It may be that they were returned in ample time before the trial to have enabled the defendant to have had *alias* attachments issued and executed upon said witnesses. An application for a continuance should set forth fully and distinctly the diligence used to obtain the absent testimony, or such facts as will excuse the use of diligence; and it must appear that all the means provided by law were resorted to by the defendant to obtain the testimony, and were resorted to promptly, or that facts existed which excused him from exercising such diligence. This trial was had June 14, 1884. On April 21, 1884, the attachments for the witnesses were issued. The return of the sheriff upon one of these is dated April 28, 1884. On the other the return is not dated. There is nothing in the application or the record which indicates when the writs were returned into the trial court. If they were returned in time to allow *alias* writs to be issued to the counties where the witnesses were alleged to reside, and in time for said writs to be executed and returned before the time of trial, then it devolved upon defendant to obtain the issuance of *alias* writs, and to cause them to be properly forwarded to the proper officers, or to show sufficient reason for not doing so. (Clark's Cr. Law, p. 471, note 186.)

There was evidence tending to show that defendant had purchased the alleged stolen cow from one Baker. Upon this issue the court charged the jury as follows: "If you believe that defendant had possession of said cow, then if you have a reasonable doubt as to whether or not he purchased said cow from Baker, in good faith, believing that Baker had a right to sell the cow to him, you will

acquit the defendant." This charge is erroneous in two respects: 1. It gives the benefit of the reasonable doubt, upon this issue, to the State as well as the defendant. 2. It makes the defendant's innocence of the charge depend upon his *good faith* and his *belief in Baker's right to sell.* Such charge, under the evidence in this case, was calculated, we think, to injuriously affect the defendant's rights. (*Clayton* v. *The State,* 15 Texas Ct. App., 348; *McAfee* v. *The State,* 14 Texas Ct. App., 668.) Because of this error the judgment will be reversed and the cause remanded.

On the trial of this case the State introduced a witness named Pyland, who had just before the trial, in the same court, pleaded guilty to a charge of theft of cattle, and the jury had assessed a punishment of two years' confinement in the penitentiary against him. He testified to facts which were very damaging to the defendant, and without which this conviction could not be sustained. In the defendant's motion for a new trial, and in the affidavit of one of his counsel accompanying it, it is made to appear that this witness had told the county attorney that he knew facts which would convict the defendant; that the county attorney thereupon agreed with said witness that if he, the witness, would testify all he knew about defendant in this case, the judgment of conviction against him, which had at that time been obtained, should be set aside, and he should be turned loose.

There is nothing in the record controverting the sworn statements of the defendant and his counsel in relation to this matter. We must, therefore, consider the statements as true; but while treating them as true, because uncontradicted and unexplained, we still hope that they are founded upon a mistake of facts, and can be explained consistently with justice and fair dealing on the part of the able county attorney. As presented to us, the transaction was such as to demand judicial condemnation, and we think the learned trial judge, in the absence of any contradiction or explanation of the sworn statements of the defendant and his counsel, should have promptly set aside the conviction upon this ground. It is not the policy of the State to have her citizens convicted of offenses by other than fair means and unbought testimony. It may be true that the witness Pyland testified truthfully; but if, as charged, he had placed before him the alternative of serving a term in the penitentiary, or of testifying to the guilt of the defendant, he certainly testified under a very strong temptation, the influence of which was adverse to the defendant. He testified as a bribed witness — a witness testifying for his own liberty; testifying to secure a boon

which perhaps no amount of money could have induced him to part with. That he was testifying under this powerful temptation was unknown to the defendant and to the jury. Had the fact been known to the jury, it is reasonable to suppose that it would have been gravely considered by them in passing upon his credibility, and in weighing his testimony.

It was alleged in the indictment that the animal alleged to have been stolen was the joint property of Trigg and Johnson. It was proved that they were the owners, but that one Bolin also owned an interest in the same. It was sufficient to prove the want of consent of the alleged owners, Trigg and Johnson, and it was not a variance between allegation and proof that Bolin also owned an interest in the property. (Code Crim. Proc., art. 426.)

No other alleged error than those above discussed has been presented in such manner as to authorize a consideration thereof. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered April 25, 1885.]